Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| LAURA PÉREZ HERNÁNDEZ<br>Apelada<br><br><br>v.<br><br><br>DARLENE PÉREZ RAÍCES<br>Apelante | TA2025AP00186 | Apelación procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm.<br>AR2024RF00445<br><br><br>Sobre:<br>Alimento |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 5 de septiembre de 2025.

a.

La señora Darlene Pérez Raíces (señora Pérez Raíces o recurrida), acude ante nosotros mediante un recurso que denominó *Apelación*, pero que acogemos como *certiorari*[1]*,* solicitando la revocación de una *Resolución* emitida el 3 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo, (TPI). A través de su dictamen el foro recurrido declaró *No Ha Lugar* la moción de modificación de pensión alimentaria instada por la recurrida.

Adelantamos que hemos decidido *denegar* expedir el recurso solicitado.

---

[1] Al ordenar esto, lo hacemos con plena conciencia de que, de ordinario, los dictámenes de alimentos que modifican o intentan modificar una decisión final previa constituyen propiamente sentencias, por tanto, revisables mediante recursos de apelación. *Figueroa v. Del Rosario*, 147 DPR 121 (1998). Sin embargo, examinado el tracto procesal de este caso, resulta evidente que se trata de un intento de la parte peticionaria de relitigar una muy reciente adjudicación de pensión alimentaria que le resultó adversa, sin aportar elementos noveles o distintos a los que fueron adjudicados en la Sentencia de 5 de marzo de 2025.

b.

Limitándonos a los datos procesales pertinentes al asunto traído a nuestra consideración, la señora Laura Hernández Pérez, (abuela custodio o recurrida), instó una *Demanda* sobre solicitud de alimentos en favor de la menor J.YM.P., de quien es abuela paterna y cuya custodia ostenta, para que la peticionaria pagara una pensión alimentaria en beneficio de dicha menor, que es su hija.

Tal solicitud dio lugar a que el asunto fuera referido al examen de un Examinador de Pensiones Alimentarias, (EPA).

Iniciado el proceso de descubrimiento de prueba, el EPA tuvo que resolver múltiples controversias en el transcurso de esta etapa, que incluyó la intervención del Tribunal, con el propósito de que la peticionaria produjera cierta prueba que se le requirió.[2]

Entonces, llegada la fecha de la celebración de la vista en su fondo, **las partes tuvieron la oportunidad de presentar toda la prueba documental y testifical que estimaron pertinente**, lo que incluyó contrainterrogar los testimonios contrarios. Como resultado, el 13 de febrero de 2025, el EPA refirió al Tribunal un *Informe y Recomendaciones*, recomendando que se le impusiera a la peticionaria el pago de una pensión alimentaria en favor de la menor de $712.47 mensuales, junto a cargos retroactivos, y otros gastos (tutorías, escolares y médicos), más honorarios de abogados.

En el detallado *Informe y Recomendaciones* del EPA se dejó constancia de los estados de cuentas de la peticionaria, según fueron presentados como parte de la prueba de la demandante-recurrida, particularizándolos en una tabla. En lo que concierne al recurso ante nosotros, parte de la prueba que el EPA sopesó fue el testimonio dado por la peticionaria para justificar los depósitos en las referidas cuentas bancarias, de los cuales, explicó, fueron producto de la venta de unos

---

[2] Ver entrada núm. 64 de SUMAC, *Informe y recomendaciones* del EPA de 13 de febrero 2025.

automóviles (nueve autos), que su padre le dejó al fallecer. Sin embargo, el EPA indicó que la peticionaria no había presentado ningún documento que sustentara tal versión, ni resultaba explicable el depósito de cantidades sustanciales a dicha cuenta por espacio de quince meses. Se resaltó en el mismo Informe que la peticionaria no había logrado articular una razón creíble para explicar la referida actividad económica, como tampoco por qué no lo había informado en el interrogatorio directo. En la conclusión del *Informe* se dejó plasmado que la peticionaria había tenido la oportunidad real de informar sus ingresos antes de la vista evidenciaria, pero eligió no hacerlo, y que el EPA no tenía duda alguna que ésta tenía capacidad para generar ingresos mayores de los que informó.[3]

Examinado el *Informe* bajo discusión, el TPI lo acogió en integridad, mediante *Sentencia* del **5 de marzo de 2025**, por lo que le impuso a la peticionaria el pago de la pensión, bajo los términos allí recomendados.

Entonces, pasados a penas poco más de tres meses de emitida la referida *Sentencia*, es decir el **23 de junio de 2025**, la peticionaria instó la moción de revisión de pensión alimentaria que da lugar al recurso ante nuestra consideración. Como fundamento para esta solicitud adujo que el dinero sobre su cuenta de bancos considerado por el EPA al recomendar la pensión alimentaria fue producto de unos autos heredados de su padre fallecido, pero que ya se había acabado, de modo que no podía asumir el pago de la obligación que se le impuso. Junto a esta moción la peticionaria acompañó sendas declaraciones juradas, con el propósito de establecer lo argumentado.

En desacuerdo, la recurrida presentó escrito en oposición, en el que arguyó que la solicitud de revisión de la pensión alimentaria instada por la parte peticionaria, era realmente un intento de reabrir un caso que ya había sido resuelto en los méritos, mediante la *Sentencia* de 5 de marzo de

---

[3] Id, págs. 1-10.

2025, sin cambios algunos en las circunstancias económicas de la señora Pérez Raíces.

Es así como, el 3 de julio de 2025, el tribunal *a quo* emitió la *Resolución* cuya revocación nos solicita la señora Pérez Raíces, declarando *No Ha Lugar* la moción de revisión de pensión alimentaria.

Como adelantamos en la introducción, inconforme con el referido dictamen, la parte peticionaria decidió acudir a este Tribunal de Apelaciones. En su recurso la señora Pérez Raíces arguyó que el foro primario incidió al no realizar una vista para considerar los cambios sustanciales en los ingresos que había alegado, y que ameritaban la revisión de la pensión alimentaria establecida.

A raíz de dicho escrito, la parte recurrida también compareció ante nosotros, señalando las razones por las cuales debíamos confirmar la determinación recurrida. En lo esencial, la recurrida insistió en que la peticionaria lo que intenta es relitigar asuntos recién adjudicados, que tuvo oportunidad de haber planteado en la vista en su fondo celebrada ante el EPA.

c.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra, pág. 711.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra*. De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40[4] de nuestro Reglamento, 4 LPRA Ap. XXII-B, se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró,* supra.

---

[4]   A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
   B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
   C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
   D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
   E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
   F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
   G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730.

A esos efectos, la función del Tribunal Apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del tribunal inferior y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de evidencia suficiente de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021) (citando a *SGL Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Trinidad v. Chade*, 153 DPR 280 (2001); *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000).

d.

Basta una mirada al trámite procesal que culminó en la *Sentencia* de 5 de marzo de 2025 para percatarnos que, la casi inmediata presentación de una moción de revisión de pensión alimentaria por la peticionaria, tuvo el propósito de relitigar asuntos que debieron ser llevados a la atención del EPA cuando se celebró la vista en su fondo.

Al así afirmar, no solo pesa en nuestra conciencia judicial el hecho de la cercanía de las fechas entre la *Sentencia* donde se ordenó el pago de la pensión alimentaria, el 5 de marzo de 2025, frente a la petición de su revisión por presuntos cambios en las condiciones económicas, el 23 de junio de 2025; sino también el hecho incontestable de que las causas identificadas en dicha moción para solicitar la revisión fueron consideradas

o pudieron ser alzadas en la vista en su fondo realizada ante el EPA, pero la peticionaria eligió no hacerlo, a pesar de haber tenido la oportunidad. En específico, los asuntos atinentes al ingreso recibido por la peticionaria por causa de la venta de los autos heredados de su padre fallecido, expresamente formaron parte de los temas dirimidos en la vista en su fondo celebrada ante el EPA, a la que compareció con representación legal.

A todas luces, al foro recurrido le resultó evidente lo que precede, y de ahí su rápida denegatoria al petitorio de la señora Pérez Raíces.

Solo entonces nos resta reiterar que la labor revisora de este Tribunal de Apelaciones frente a los dictámenes interlocutorios provenientes del TPI, se limita a auscultar si en la determinación recurrida obró pasión, prejuicio, parcialidad o error manifiesto que justifique nuestra intervención. No atisbamos ninguna de tales condiciones, por lo que solo corresponde denegar la expedición del recurso solicitado.

**Parte dispositiva**

Por lo expresado, hemos decidido *Denegar* expedir el recurso solicitado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones